**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**

**MICHAEL ROBERSON,**

**Defendant.**

**Criminal Action No. 21-102 (JDB)**

## <u>MEMORANDUM OPINION</u>

Defendant Michael Roberson is charged by indictment with one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  A jury trial on this charge is currently set to begin January 31, 2022.  In advance of trial, the government filed the instant motion in limine seeking admission of three categories of evidence pursuant to Federal Rule of Evidence 404(b).  For the reasons explained below, the Court will grant the government's motion in full.

### <u>Background</u>[1]

In September 2015, defendant Michael Roberson initiated an email conversation with "Email Address 2,"[2] seeking access to an online cloud storage account maintained by Email Address 2 that contained videos and images of child pornography (the "Dropbox Account").  <u>See</u> Gov't's Mot. in Lim. to Introduce Evid. Pursuant to Fed. R. Evid. 404(b) [ECF No. 32] ("Gov't Mot.") at 1–2.  Before giving defendant the password for the Dropbox Account, however, Email Address 2 asked him to "send . . . one vid so I know what you like."  <u>Id.</u> at 1.  Defendant complied on September 7, 2015, sending Email Address 2 a short video depicting the rape of a prepubescent

---

[1] The following summary is based on the government's factual assertions in its motion, and the Court relates these facts solely as a proffer of what the government intends to prove at trial.  <u>See</u> Gov't's Mot. in Lim. to Introduce Evid. Pursuant to Fed. R. Evid. 404(b) [ECF No. 32].  The Court's reliance on these facts here should not be construed as an endorsement of their truth, a determination properly left for the jury.

[2] For the sake of concision, the Court will refer to both the email address itself and the user of that address as "Email Address 2."

1

child by an adult male.  Id.  Defendant's transmission of this video forms the basis for the instant charge of distribution of child pornography.  See Indictment [ECF No. 1].  From September 2015 through November 2016, Roberson maintained a sporadic email correspondence with Email Address 2 that eventually totaled approximately seventy messages.  Gov't Mot. at 1.  Over those fourteen months, defendant repeatedly requested renewed access to the Dropbox Account, and the passwords he received from Email Address 2 often alluded to the account's contents, using words like "kiddy," "baby," "virgin," and "pedos."  Id. at 1–2.  In addition, defendant and Email Address 2 discussed their reactions to the videos in the Dropbox Account as well as their general sexual interest in children.  Id. at 2

During the same period in which he was corresponding with Email Address 2, defendant also searched the internet for content associated with the sexualization of children.[3]  Gov't Mot. at 3.  In January 2016, defendant searched for "child sex doll" and "child sex doll porn," and throughout 2016, he searched the terms "babysitter porn," "brother sister porn," and "father daughter porn."  Id.  In January 2016, Roberson sought out and accessed news articles describing someone in a clown costume sexually abusing a child, while in November 2016, defendant ran a search for "podesta art collection," a supposed cache of images depicting nude children.  Id.

Defendant's involvement with Email Address 2 came to the attention of law enforcement in 2019, and agents with Homeland Security Investigations interviewed defendant three times in March of that year.  See Mem. Op., Nov. 15, 2021 [ECF No. 30] at 2.  During their first interview on March 7, 2019, defendant consented to have his cell phone "imaged," a process by which investigators replicated the data on the phone at the time of imaging.  See id. at 9, 24–26.  When

---

[3] These searches were discovered pursuant to a search warrant executed on Roberson's email address.  Gov't Mot. at 2–3.

agents analyzed the data, they discovered multiple thumbnail images depicting minors engaged in sexually explicit conduct.  Gov't Mot. at 2.

On February 9, 2021, a federal grand jury in the District of Columbia indicted Roberson on one count of distributing child pornography, arising from his September 7, 2015 transmission of the pornographic video to Email Address 2.  See Indictment.  The government filed the instant motion in limine in November 2021, asking the Court to admit three categories of evidence: the entirety of defendant's communications with Email Address 2; excerpts from his browser and search history suggesting his sexual interest in children; and the sexually explicit images of children found on his phone.[4]  See Gov't Mot. at 3–5.  This evidence, the government contends, will not be offered to prove defendant's character (a forbidden purpose under Federal Rule of Evidence 404(b)(1)) but will be offered instead to show his motive, intent, knowledge, identity, and/or absence of mistake in committing the alleged crime (all permissible purposes under Rule 404(b)(2)).  See id.; see also Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose . . . .").  In addition, the government argues that defendant's correspondence with Email Address 2 is not subject to Rule 404(b)'s limitations at all, as those messages are not "other acts" but instead are "intrinsic to the charged criminal conduct."  Gov't Mot. at 3.  The motion is fully briefed and ripe for decision.

---

[4] The government's motion also serves to satisfy its obligation to provide reasonable pre-trial written notice "of any [404(b)] evidence that the prosecutor intends to offer at trial" and to "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Fed. R. Evid. 404(b)(3).

**Legal Standard**

Courts in this circuit follow a "two-step mode of analysis" in determining the admissibility of evidence of other acts by the defendant.  United States v. Anderson, 174 F. Supp. 3d 494, 496 (D.D.C. 2016) (quoting United States v. Burch, 156 F.3d 1315, 1323 (D.C. Cir. 1998)).  The first step in this analysis "addresses Rule 404(b)" and requires the court to "determine whether the evidence is relevant to a material issue other than character."  See United States v. Lieu, 298 F. Supp. 3d 32, 51 (D.D.C. 2018) (quoting Burch, 156 F.3d at 1323), aff'd, 963 F.3d 122 (D.C. Cir. 2020).  If the proposed evidence clears Rule 404(b)'s hurdle, the court must then assess "whether the probative value [of the evidence] is substantially outweighed by the prejudice" under Federal Rule of Evidence 403.  Id. (quoting Burch, 156 F.3d at 1323).

Federal Rule of Evidence 404(b) permits the introduction of "[e]vidence of any other crime, wrong, or act" for certain purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  But such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Id.  As the D.C. Circuit has noted, "'Rule 404(b) is a rule of inclusion rather than exclusion,' 'prohibiting the admission of other crimes evidence in but one circumstance—for the purpose of proving that a person's actions conformed to his character.'"  United States v. Machado-Erazo, 901 F.3d 326, 333 (D.C. Cir. 2018) (some internal citation marks omitted) (first quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000); then quoting United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc)).  In other words, so long as the evidence is not put forward for an improper character purpose, it may pass through Rule 404(b)'s screen.  See, e.g., United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 159 (D.D.C. 2020) ("[U]nder Rule 404(b), any purpose for which

bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered <u>solely</u> to prove character." (quoting <u>United States v. Miller</u>, 895 F.2d 1431, 1436 (D.C. Cir. 1990))).

Because Rule 404(b) applies exclusively to evidence of <u>other</u> acts, however, only "[a]cts 'extrinsic' to the crime charged are subject to Rule 404(b)'s limitations; acts 'intrinsic' to the crime are not." <u>United States v. McGill</u>, 815 F.3d 846, 879 (D.C. Cir. 2016) (per curiam).  The D.C. Circuit has adopted a very narrow understanding of what counts as an "intrinsic" act, explicitly rejecting the application of that label to evidence that merely "'complete[s] the story' or 'incidentally involve[s]' the charged offense or 'explain[s] the circumstances'" surrounding it. <u>Bowie</u>, 232 F.3d at 928; <u>see also</u> <u>United States v. Wilkins</u>, Crim. A. No. 19-390 (RC), 2021 WL 1894990, at *7 & n.4 (D.D.C. May 11, 2021) (collecting cases); <u>United States v. Alexander</u>, 331 F.3d 116, 125–26 & n.13 (D.C. Cir. 2003) (characterizing <u>Bowie</u> as expressing "dissatisfaction with the extrinsic-intrinsic distinction").  Instead, "the D.C. Circuit has identified two narrow circumstances encompassing intrinsic evidence: the evidence 'is either of an act that is part of the charged offense or is of acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'" <u>Oseguera Gonzalez</u>, 507 F. Supp. 3d at 159 (alteration in original) (some internal quotation marks omitted) (quoting <u>United States v. Moore</u>, 651 F.3d 30, 63 (D.C. Cir. 2011)); <u>accord</u> <u>Bowie</u>, 232 F.3d at 929.  Likewise, an act offered as "direct evidence of a fact in issue" also counts as "intrinsic." <u>Alexander</u>, 331 F.3d at 126.

Yet compliance with Rule 404(b)—whether because the act in question is intrinsic to the charged conduct or because the evidence is offered for a permissible purpose—"does not itself assure admission of the other crimes evidence." <u>Bowie</u>, 232 F.3d at 930.  Even evidence that makes it past Rule 404(b)'s screen must still survive Rule 403's balancing test: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . .

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Rule 403 establishes a high barrier to justify the exclusion of relevant evidence, by requiring that its probative value must be 'substantially' outweighed by considerations such as 'unfair' prejudice."  United States v. Lieu, 963 F.3d 122, 128 (D.C. Cir. 2020), aff'g 298 F. Supp. 3d 32 (D.D.C. 2018).  "Evidence is unfairly prejudicial if it prejudices a defendant's case 'for reasons other than its probative value,' such as by creating 'an undue tendency to suggest decision on an improper basis.'"  Wilkins, 2021 WL 1894990, at *6 (first quoting United States v. Wallace, 124 F. App'x. 165, 167 (4th Cir. 2005); then quoting United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998)); see also Old Chief v. United States, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); Oseguera Gonzalez, 507 F. Supp. 3d at 146 (defining "unfair prejudice" as "prejudice that is 'compelling or unique'" (quoting United States v. Mitchell, 49 F.3d 769, 777 (D.C. Cir. 1995))).

## Analysis

### I.   Defendant's Communications with Email Address 2

First, the government seeks to admit all of defendant's communications with Email Address 2, even though only one of those messages is alleged to have included child pornography. The government principally argues that the entire series of conversations between defendant and Email Address 2 is intrinsic to the charged crime; in the alternative, it contends that the communications nonetheless satisfy Rule 404(b) because they are not offered to prove defendant's character.  See Gov't Mot. at 3–4; Gov't's Reply to Def.'s Obj. to Evid. Offered Pursuant to Fed. R. Evid. 404(b) [ECF No. 37] ("Gov't Reply") at 2–4.

The Court concludes that the messages leading up to and immediately surrounding defendant's transmission of the allegedly unlawful video are intrinsic to the crime charged, but the post-video communications cannot properly be considered intrinsic acts under D.C. Circuit law. Nonetheless, the Court agrees with the government that Rule 404(b) does not preclude admission of the post-video communications, as they are relevant to defendant's motive, intent, knowledge, identity, and/or lack of accident.  Finally, the probative value of the proffered communications is not substantially outweighed by the danger of unfair prejudice under Rule 403.  The government therefore will be permitted to introduce the entirety of defendant's correspondence with Email Address 2 at trial.

In the D.C. Circuit, an act is "intrinsic" to the charged conduct for purposes of Rule 404(b) only if it (a) is part of the charged offense; (b) is offered as direct evidence of the charged crime; or (c) was performed contemporaneously with the charged crime and facilitated the commission of the charged crime.  In this case, defendant's indictment stems exclusively from a September 7, 2015 email transmitting one pornographic video to Email Address 2.  None of the other seventy-odd emails between defendant and that address are alleged to have been unlawful in any way.  As such, those communications are not "part of the charged conduct."  Cf., e.g., United States v. Miller, 799 F.3d 1097, 1105 (D.C. Cir. 2015) (testimony from prospective home buyers that defendant defrauded them was intrinsic to charged scheme to obtain "moneys, funds and property from . . . prospective home buyers" by fraudulent means (emphasis omitted)); Wilkins, 2021 WL 1894990, at *7–9 (past assaults of complainant by defendant were "part of the charged offense" of

sex trafficking by force, fraud, or coercion because the assaults created the coercive atmosphere alleged).

Likewise, the emails at issue here are not direct evidence of the charged crime. Although the other emails exchanged between defendant and Email Address 2 may make the defendant's commission of the charged crime more likely—i.e., they may be relevant—"it cannot be that all evidence tending to prove the crime is part of the crime," McGill, 815 F.3d at 883 (quoting Bowie, 232 F.3d at 929)). That the passwords for the Dropbox Account included words like "pedos," for example, is far from "direct evidence" that defendant distributed child pornography. Cf. Alexander, 331 F.3d at 126 (concluding that a 911 call in which the caller told the dispatcher that the defendant had "a gun on him" minutes before the defendant was arrested for possessing a firearm "provided only 'intrinsic' evidence of the crime charged").

This leaves only "acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime." Bowie, 232 F.3d at 929. The Court concludes that the messages leading up to and immediately surrounding defendant's alleged transmission of the pornographic video satisfy this test. Based on the government's summary, these communications appear to have been made close in time to—and perhaps even within a few minutes of—the transmission of the video. Likewise, the pre-video messages "facilitated the commission of the charged crime," with defendant initiating contact with Email Address 2, who then directly solicited the criminal act. See, e.g., United States v. Lackey, No. 1:17-CR-269, 2019 WL 6464656, at *5 (M.D. Pa. Dec. 2, 2019) (applying the Bowie rule and holding that "the act of sending a text message inquiring about the availability of firearms facilitates the later possession of firearms"); cf. United States v. Cox, Crim. A. No. 11-99 (JLL), 2011 WL 4906672, at *3 (D.N.J. Oct. 14, 2011) (email correspondence between defendant and the recipient of pornographic

materials regarding the logistics of shipping the materials "directly facilitated the commission of the crime by arranging the time, manner and place of the distributions" (internal quotation marks and citation omitted)).  These communications thus satisfy the D.C. Circuit's restrictive definition of intrinsic acts.

With respect to communications exchanged <u>after</u> defendant sent the video in question, however, the government's argument runs into problems.  According to the government, the allegedly unlawful video was sent on September 7, 2015—near the beginning of the exchange—but defendant's correspondence with Email Address 2 continued for fourteen more months until November 2016.  Gov't Mot. at 1.  Indeed, it is possible, based on the government's proffer, that the allegedly unlawful transmission may have been just the third email in a conversation ultimately tallying approximately seventy messages.  <u>See</u> <u>id.</u>  This leaves sixty-some communications occurring <u>after</u> the charged conduct, with some messages exchanged over a year afterwards.  It stretches credulity to call an email sent in November 2016 "contemporaneous" with one sent in September 2015.  <u>See, e.g.</u>, <u>Bowie</u>, 232 F.3d at 929 (concluding that defendant's possession of counterfeit bills in April was not intrinsic to his possession of different counterfeit bills purchased from the same supplier in May).  In an apparent attempt to portray the entire exchange of messages as one event, the government avers that "the tone, purpose, and circumstances of defendant's messages remain[ed] the same" over the fourteen-month period.  Gov't Mot. at 3.  But the government cites no case law (nor can the Court find any) suggesting that a consistent tone can render two messages sent fourteen months apart contemporaneous with one another.

In addition, the Court struggles to see how the post-video messages could have "facilitated" the charged crime.  In order to "facilitate," an act must "promote, help forward . . . [or] assist in bringing about []a particular end or result."  <u>Facilitate</u>, Oxford English Dictionary (3d ed. 2009).

Facilitation thus requires some sort of causal nexus between the purportedly "intrinsic" act and the charged crime; there does not appear to be any such nexus between the post-video communications and the allegedly unlawful transmission, as the Court fails to see how an act occurring well after the charged crime could "assist in bringing [it] about."   Cf. United States v. Cox, No. CR-16-08202-001-PCT-ROS, 2018 WL 9785498, at *1 (D. Ariz. May 1, 2018) ("The government chose to charge conduct [distribution of child pornography] occurring in December of 2015, and the government may not admit the August [2015] communications [discussing defendant's interest in child porn] as direct evidence of the charged offenses."), aff'd, 963 F.3d 915 (9th Cir. 2020).  For these reasons, the Court concludes that the messages exchanged after the allegedly unlawful email are not properly characterized as "intrinsic."[5]

The government urges that defendant's communications with Email Address 2 "provide necessary and indispensable context for his conduct."  Gov't Reply at 4.  Perhaps, but the D.C. Circuit has closed the door on such a broad view of "intrinsic" acts.  See Bowie, 232 F.3d at 929; accord Wilkins, 2021 WL 1894990, at *7 & n.4.  Courts in this Circuit are obligated to be stingy with the designation "intrinsic," and merely providing helpful context for the charged crime is too "flimsy" a basis for jettisoning Rule 404(b) entirely.  Bowie, 232 F.3d at 929.  Since the post-video communications do not fit into any of the Bowie categories, they cannot be considered "intrinsic" acts exempt from the strictures of Rule 404(b).

With that said, the Court nonetheless concludes that the post-video communications are not excluded by Rule 404(b), as they are probative as to Roberson's motive, intent, knowledge,

---

[5] Since the government has not proffered the actual messages exchanged between defendant and Email Address 2, the Court cannot foreclose the possibility that a message sent immediately after defendant's transmission of the video may bear such a close conceptual and temporal connection to it that it could properly be considered "intrinsic."  Likewise, it is possible that a pre-video message could be so far removed from the video in time and content that it is not "intrinsic."  To the extent such messages exist, the Court can, if necessary, rule on their "intrinsic-ness" at a later date.

identity, and/or absence of mistake. The pre-video messages provide a specific motivation for the charged conduct (to gain access to the Dropbox Account), and the post-video communications, in which defendant discusses his consumption of and reactions to the content in that account, corroborate that motive. The fact that the passwords for the account included language suggestive of child pornography is also probative as to defendant's absence of mistake. Defendant suggested in interviews with law enforcement that he wanted access to the account in order to view adult pornography, so the fact that the account's passwords included words like "kiddy," "baby," and "pedos" is relevant for disproving those claims of mistake. The government also proffers that, at one point in his conversation with Email Address 2, defendant revealed his name. Gov't Reply at 4. That message—assuming the government can sufficiently link it to the other messages in the exchange—is undoubtedly relevant for establishing that it was the defendant corresponding with Email Address 2 rather than, as he has suggested, a hacker. See Def.'s Obj. & Opp'n to Gov't's Proposed Evid. [ECF No. 33] ("Def.'s Opp'n") at 1–2, 12 (making this suggestion).

Finally, many of the communications with Email Address 2 discuss defendant's sexual attraction to children and his enjoyment of the pornographic material in the Dropbox Account. As discussed further infra, courts frequently admit evidence of a defendant's sexual interest in children in prosecutions for distribution of child pornography in order to demonstrate that the defendant "distributed images of child pornography knowingly and that it was not merely a mistake." Lieu, 298 F. Supp. 3d at 53 (collecting cases); see also United States v. Hite, 916 F. Supp. 2d 110, 120–24 (D.D.C. 2013) (admitting evidence of online conversations in which defendant discussed his sexual interest in children as probative of intent, knowledge, and absence of mistake in prosecution for attempted coercion and enticement of a minor). Especially since defendant has previously denied any sexual interest in children, see Gov't Mot. at 2, evidence

11

rebutting such denials is highly probative.  Cf. United States v. Curtin, 489 F.3d 935, 940 (9th Cir. 2007) (en banc) ("Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense.").

More generally, even messages that do not directly go to defendant's motive, knowledge, identity, or lack of mistake can still be relevant for non-character purposes.  As the Supreme Court noted in Old Chief:

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard.

519 U.S. at 189.  To forbid the introduction of the rest of defendant's conversation with Email Address 2 would transform an otherwise intelligible act into a data point, creating the kind of gap which could undermine what might have been a persuasive presentation to the jury.  Put another way, by providing context for the alleged crime, the remainder of defendant's communications with Email Address 2 make the government's account of events, including that defendant sent the incriminating message, more likely.  This is the very touchstone of relevance.  See Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence.").  Accordingly, the entirety of defendant's communications with Email Address 2 are "relevant to a material issue other than character," Burch, 156 F.3d at 1323, and may be admitted consistently with Rule 404(b).

That conclusion does not, however, settle the ultimate admissibility of the communications.  Rather, the messages must still satisfy Rule 403, which permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403.  Here, however, any threat of prejudice posed by the introduction of these

communications does not substantially outweigh the messages' significant probative value.[6]  The Court has already discussed at length how and why defendant's conversation with Email Address 2 is probative, and defendant has pointed to no unfair prejudice likely to arise from the introduction of the messages.  To be sure, evidence that depicts a defendant as a pedophile could indeed stigmatize him in the eyes of the jury.  But in a prosecution for distribution of child pornography, such "prejudice" can hardly be characterized as "unfair."  As the Court has explained, the emails are probative in part <u>because</u> they demonstrate defendant's sexual interest in children, and Rule 403 does not countenance exclusion of evidence because it too effectively suggests that the defendant committed the charged crime.  <u>See</u> <u>Wilkins</u>, 2021 WL 1894990, at *6 ("Evidence is unfairly prejudicial if it prejudices a defendant's case for reasons <u>other than its probative value</u> . . . ." (emphasis added) (internal quotation marks and citation omitted)).

Defendant appears to suggest that admitting his communications with Email Address 2 would violate Rule 403 because he has claimed that his email was "hacked," so "[p]resenting [a hacker's correspondence] would prejudice Mr. Roberson by confusing the issue of who did what, misleading the jury to incorrectly conclude that Mr. Roberson might have done what in fact a hacker had done."  Def.'s Opp'n at 1–2.  To the extent defendant is reminding the Court that the government must prove that it was he who sent the messages in order for them to be admissible, he is quite right.  To be admissible, the email messages must be relevant, <u>see</u> Fed. R. Evid. 401, and to be relevant, they must have been sent by defendant.  <u>See, e.g.</u>, <u>Huddleston v. United States</u>,

---

[6] The Court notes that, although evidence of both extrinsic and intrinsic acts is subject to Rule 403, the application of that rule's balancing test differs between the two kinds of evidence.  Evidence of extrinsic acts creates a danger of prejudice by potentially prompting an improper character inference, while direct evidence of the charged offenses generally poses no such problem.  At the same time, the probative value of evidence of an intrinsic act, which by definition directly establishes the commission of the crime, will generally be greater than evidence of "other," <u>i.e.</u>, extrinsic, acts, the relevance of which will usually be more attenuated.  Accordingly, it is highly unlikely that evidence of an act intrinsic to the charged crime would ever be excluded under Rule 403.

485 U.S. 681, 689 (1988) ("[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.").  And "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."  Fed. R. Evid. 104(b).  Accordingly, as required by Rule 104(b) and Huddleston, the Court will "examine[] all the evidence in the case and decide[] whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence."  Huddleston, 485 U.S. at 690.

The government is likely to satisfy this burden.  Defendant discussed his correspondence with Email Address 2 at length with federal agents without ever suggesting that a hacker sent the messages, see Gov't Mot. at 2; investigators executed a search warrant on defendant's email address and discovered several documents identifying defendant as the address's user, Gov't Mot. at 2; and, as already mentioned, defendant identified himself during his conversation with Email Address 2, see Gov't Reply at 4.  If introduced at trial, this evidence is likely sufficient to permit a reasonable jury to find that defendant sent the messages in question.[7]

In sum, the Court concludes that the messages between defendant and Email Address 2 before the transmission of the video at issue in this case are intrinsic to the crime charged and thus exempt from the strictures of Rule 404(b).  And although the post-video messages are not intrinsic acts, they are nonetheless admissible under Rule 404(b)(2), since they contextualize defendant's

---

[7] Defendant's argument also sounds in the authenticity of the emails.  Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Authentication is a subset of conditional relevance and is governed by the procedures of Rule 104.  See Fed. R. Evid. 901 advisory committee's note to 1972 proposed rules ("Th[e] requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b).").  "In order to admit the [proffered] evidence, the Court must conclude that the proponent 'has "offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is."'"  United States v. Hassanshahi, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting United States v. Safavian, 435 F. Supp. 2d 36, 38 (D.D.C. 2006)).  For the same reasons as above, the Court concludes that the government will likely be able to lay sufficient foundation for these emails at trial.

alleged criminal conduct and help to demonstrate his motive, knowledge, identity, and/or lack of accident.   Finally, under Rule 403, the significant probative value of these messages is not substantially outweighed by the danger of unfair prejudice.   Assuming that the government introduces evidence sufficient for the jury to conclude that Roberson sent the messages in question, the entirety of the defendant's correspondence with Email Address 2 from September 2015 to November 2016 may be introduced as evidence at trial.

## II.   **Defendant's Search History**

The second category of evidence the government wishes to admit is excerpts from defendant's internet activity during 2016.   In particular, the government seeks to introduce evidence that defendant searched the internet for, among other terms, "child sex doll," "child sex doll porn," and "babysitter porn," and that he sought out and read news articles discussing child pornography and/or child sexual assault.   By showing that "he purposely sought out material associated with the sexualization of children," the government argues, this evidence evinces Roberson's sexual interest in children, which in turn helps to demonstrate his motive, intent, knowledge, and/or absence of mistake in sending the video at issue.   Gov't Mot. at 4.

The Court agrees.   Many cases from this District and elsewhere have recognized that evidence suggesting that a defendant is sexually interested in children is probative of his motive, intent, knowledge, and/or absence of mistake in distributing child pornography.   E.g., Lieu, 298 F. Supp. 3d at 53; United States v. Sebolt, 460 F.3d 910, 917 (7th Cir. 2006) (evidence demonstrating "sexual interest in children . . . serve[s] as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children").   In United States v. Hite, for example, the defendant was charged with two counts of attempted coercion and enticement of a minor, and the court admitted evidence showing that he had searched for and accessed files with names suggesting

they contained child pornography.  916 F. Supp. 2d at 119–20.  Judge Kollar-Kotelly concluded

that, because the evidence "reflect[ed] sexual activity involving minor children," it was "highly

probative of the Defendant's intent."  Id. at 120.  This was so even though defendant accessed the

files in question thirteen months before the charged conduct: the prior act was still "sufficiently

close in time to the events at issue . . . to make the evidence probative of the Defendant's intent

with respect to the charges."  Id.; see also United States v. Cooke, 675 F.3d 1153, 1157 (8th Cir.

2012) (noting that fourteen-month-old email conversation in which defendant indicated his interest

in having sex with a minor was "relevant to the issue at trial ([defendant's] intent, or lack of

mistake, in arranging sex with a minor), similar in kind and type to the charge, [and] not too remote

in time").

　　　　So too here.  Evidence that Roberson searched the internet in 2016 for written accounts,

images, and/or videos that sexualized children is probative as to his sexual interest in children,

which is relevant to his motive, intent, knowledge, and/or absence of mistake in seeking out and

distributing child pornography only a few months earlier.  The evidence's probative value is then

heightened by the fact that defendant has frequently denied his sexual interest in children and

claimed that he was only pretending to be attracted to children in his correspondence with Email

Address 2.  See Gov't Mot. at 2; Gov't Reply at 5–6.  Evidence of defendant's internet activity

evincing a sexual interest in children at precisely the time he was corresponding with Email

Address 2 is thus clearly relevant for rebutting those anticipated defenses without attempting to

prove defendant's character.  The parallel between this case and Hite only bolsters the Court's

conclusion: evidence of defendant's search history suggesting his sexual interest in children

satisfies Rule 404(b).

Nor does Rule 403 impede the admission of this evidence.  As with defendant's communications with Email Address 2, the Court detects no threat of unfair prejudice from the introduction of this evidence, and certainly not the kind of prejudice that would substantially outweigh the material's probative value.  Any risk of the jury drawing an unbidden propensity inference can be satisfactorily offset by a limiting instruction "restrict[ing] the evidence to its proper scope" if one is requested by the defendant.  Fed. R. Evid. 105; see also Lieu, 963 F.3d at 129 (affirming admission of 404(b) evidence in part because "the district court gave appropriate limiting instructions explaining the permissible and impermissible uses of" similar evidence). Accordingly, the Court will permit the government to introduce the proffered evidence of defendant's search and browser history.

### III.  Evidence of Child Pornography on Defendant's Phone

Finally, the government seeks to introduce evidence that federal investigators found "thumbnail images depicting apparent minors engaged in sexually explicit conduct" on defendant's phone in March 2019.  Gov't Mot. at 2.  Importantly, however, the government represents that it will not introduce these images in its case-in-chief; instead, it only intends to use this evidence for impeachment purposes or as rebuttal evidence should Roberson take the stand and testify that he is not interested in child pornography.  Id. at 5.  Even with this self-imposed limitation, however, the images must still be relevant under Rule 401 and not excludable under Rules 403 or 404 in order to be admitted.

As with the two categories of evidence discussed earlier, the government argues that these images would be admitted to corroborate defendant's sexual interest in children and to demonstrate his intent and absence of mistake, not to prove his character.  See Gov't Reply at 5 ("[E]vidence that defendant's phone contained child pornography makes less likely his claims that he did not

intend to distribute child pornography or that he did not know that the file he distributed contained child pornography.").  And as with the prior two categories of evidence, the Court agrees with the government: Rule 404(b) does not preclude the admission of the images recovered from defendant's phone.

In general, "in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged."  United States v. King, 254 F.3d 1098, 1100 (D.C. Cir. 2001); see also McGill, 815 F.3d at 884 ("The [defendant's] past conviction [for possession of cocaine with intent to distribute] was also relevant to rebut [his] claim that drugs found in an area where he was sleeping belonged to his brother"); United States v. Latney, 108 F.3d 1446, 1448 (D.C. Cir. 1997) ("Given [defendant's] involvement in the crack cocaine trade in May 1995, it was less likely that he was merely a bystander in the September 1994 transaction . . . .").  And in the specific context of child pornography, "[a defendant's] possession of other child pornography demonstrates a sexual interest in children that tends to make it more probable that [the defendant] distributed images of child pornography knowingly and that it was not merely a mistake."  Lieu, 298 F. Supp. 3d at 53.  For many of the same reasons as discussed above, then, evidence that defendant possessed child pornography in 2019 supports his sexual interest in children (itself relevant as to his motive or intent) and suggests that his distribution of child pornography in 2015 was done knowingly and not by accident.

In addition, this evidence is also admissible under Federal Rule of Evidence 414, which provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation."  Fed. R. Evid. 414(a).  The Rule then specifies that covered evidence "may be considered on any matter to which

it is relevant," Fed. R. Evid. 414(a), a provision which serves to "remove[] Rule 404(b)'s blanket ban on propensity inferences in child-molestation cases," Lieu, 298 F. Supp. 3d at 57 (quoting United States v. Jones, 748 F.3d 64, 70 (1st Cir. 2014)).   For purposes of Rule 414, "child molestation" includes "a crime under federal law . . . involving . . . any conduct prohibited by 18 U.S.C. chapter 110." Fed. R. Evid. 414(d)(2)(B).   In this case, Roberson is charged under 18 U.S.C. § 2252, which is located in chapter 110 of title 18—this is thus a criminal case in which a defendant is accused of child molestation as defined by Rule 414.  Likewise, the recovered images constitute "evidence that the defendant committed any other child molestation," because 18 U.S.C. § 2252A (also located within chapter 110) criminalizes the knowing possession of child pornography.[8]  Thus, evidence that defendant possessed child pornography on his phone in 2019 is covered by Rule 414, and the government may introduce it to "be considered on any matter to which it is relevant."  Fed. R. Evid. 414.

Whether admissible under Rule 404 or Rule 414, however, this evidence must still survive Rule 403's balancing test,[9] and the Court notes the possibility of "unfair prejudice" stemming from introducing the proffered images.  The government's motion does not specify whether it intends to actually show the recovered images to the jury, but doing so has the potential to inflame the jury and could plausibly "lure the factfinder into declaring guilt on a ground different from proof

---

[8] This section also requires (roughly) that the pornographic material have traveled in interstate commerce.  See 18 U.S.C. § 2252A(a)(5)(B).  It is not necessary, however, for the government to show that the proffered act satisfies that jurisdictional element in order to qualify as "child molestation" under the Rule.  See United States v. Sturm, 673 F.3d 1274, 1282–83 (10th Cir. 2012); United States v. Askren, Case No. 2:14-cr-00314-GMN-NJK, 2016 WL 4055640, at *3–4 (D. Nev. July 26, 2016); see also Lieu, 298 F. Supp. 3d at 58–59 (admitting evidence of knowing possession of child pornography under Rule 414 without analyzing whether the materials had traveled in interstate commerce).

[9] Notwithstanding Rule 414's statement that covered evidence "may be considered on any matter to which it is relevant," courts have uniformly concluded that Rule 403 still applies to Rule 414 evidence. See Lieu 298 F. Supp. 3d at 57 ("Rule 414 evidence remains subject to Rule 403's balancing between probative value and unfair prejudice." (quoting United States v. Joubert, 778 F.3d 247, 254 (1st Cir. 2015))); accord, e.g., United States v. Brimm, 608 F. App'x 795, 798 (11th Cir. 2015) (collecting cases); see also Lieu, 963 F.3d at 128–30 (applying Rule 403 to Rule 414 evidence).

specific to the offense charged," <u>Old Chief</u>, 519 U.S. at 180; <u>cf.</u> <u>Hite</u>, 916 F. Supp. 2d at 120 (concluding that the admission of URL addresses with sexually explicit names did not violate Rule 403 in part because "the explicit images are not being shown to the jury").[10]

Notwithstanding this possibility, the Court concludes that the danger of unfair prejudice does not substantially outweigh the probative value of introducing the images.  Even if the government does plan to show the recovered images to the jury, that fact would not be enough to "substantially outweigh" their significant probative value.  Judge Contreras's analysis of a similar issue in <u>Lieu</u>—an analysis subsequently affirmed by the D.C. Circuit, <u>see</u> <u>Lieu</u>, 963 F.3d at 128–30—is instructive.  In that case, the government sought to call the defendant's stepdaughter to testify about a years-long pattern of sexual abuse by the defendant.  <u>See</u> <u>Lieu</u>, 298 F. Supp. 3d at 55.  Although Judge Contreras acknowledged that "the alleged abuse would certainly seem abhorrent" to jurors, he concluded both that the evidence was "particularly salient on the issue of [defendant's] intent and knowledge" and that the threat of prejudice was "minimal" because "it does not appear that the evidence will be especially graphic in the context of the crimes with which [defendant] has been charged" and "the testimony . . . will [not] be especially voluminous or otherwise dominate the trial." <u>Id.</u> at 55–56.

As in <u>Lieu</u>, the images at issue here will neither be "voluminous" nor "dominate the trial," nor will they be any more "graphic" than the video on which the instant charge is based, which depicts the rape of a prepubescent girl.  Especially if that video will be published to the jury, any

---

[10] Usually, one source of unfair prejudice related to the introduction of 404(b) evidence is the chance that jurors will draw an unbidden propensity inference from the evidence.  This consideration does not apply to Rule 414 evidence, however, since that Rule permits the jury to draw precisely that inference.  The risk that the jury may do so thus does not constitute <u>unfair</u> prejudice to the defendant. <u>See</u> <u>United States v. Loughry</u>, 660 F.3d 965, 970 (7th Cir. 2011) ("[Rule 414] evidence cannot be excluded under Rule 403 simply because it tends to show that the defendant has a propensity to commit a sex offense . . . ."); <u>United States v. Bentley</u>, 561 F.3d 803, 815 (8th Cir. 2009) ("Because propensity evidence is admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not <u>unfair</u> prejudice.") (emphasis in original; internal quotations omitted).

additional inflammation caused by the publication of the recovered "thumbnail images" would be marginal.  See, e.g., Lieu, 963 F.3d at 396 (commenting that "[a] jury that heard the [defendant's own graphic descriptions of his abuse of his step-daughter] would not likely be inflamed unfairly by [the step-daughter's testimony].").  And many other courts have approved the admission of still images of child pornography where relevant.  See, e.g., United States v. Becht, 267 F.3d 767, 774 (8th Cir. 2001) (holding that publication of thirty-nine still images of child pornography to the jury "d[id] not rise to the level of unfair prejudice" where district court "took pains to limit the prejudicial effect of the images," and collecting similar cases).

The Court is also swayed by the government's intention not to introduce these potentially prejudicial images unless defendant testifies that he is not sexually interested in children.  Should that happen, the probative value of this evidence (which would persuasively rebut such a claim) would skyrocket, more than outmatching any possibility that the images might marginally inflame the jury.[11]  And, in consultation with the parties, the Court will also "t[ake] pains to limit the prejudicial effect of the images."  Becht, 267 F.3d at 774.

For these reasons, the Court concludes both that the thumbnail images recovered from defendant's phone are admissible under either Rule 404(b) or Rule 414 and that the images' probative value is not substantially outweighed by the threat of unfair prejudice.  Accordingly, the government may introduce the images on the terms suggested in its motion.

## Conclusion

For the foregoing reasons, the Court will grant the government's motion in limine in full. Defendant's communications with Email Address 2 leading up to and immediately surrounding

---

[11] Although the government's restraint in offering this evidence only when its probative value is at its maximum is a plus factor in favor of the images' admissibility, the Court's mention of that factor here should not be construed to suggest that the images would only be admissible as impeachment or rebuttal evidence.  The Court need not—and does not—decide whether the images would be admissible in the government's case-in-chief.

the transmission of the video at issue are intrinsic to the charged conduct and therefore exempt from Rule 404(b)'s requirements.  Defendant's post-video messages, though not intrinsic acts, are nonetheless admissible for the purpose of demonstrating defendant's motive, intent, knowledge, identity, and/or absence of mistake under Rule 404(b)(2).  For similar reasons, the evidence of defendant's internet activity in 2016 and the images of child pornography recovered from his cell phone in 2019 are admissible under Rule 404(b), and the latter category of evidence is admissible under Rule 414 as well.  Finally, none of the proffered evidence must be excluded under Rule 403, as its probative value is not substantially outweighed by any danger of unfair prejudice.  An accompanying Order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>January 4, 2022</u>