UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL TERRELL ROBERSON,<br>**Defendant.** | Criminal Action No. 21-102 (JDB) |

## MEMORANDUM OPINION AND ORDER

On September 6, 2022, defendant Michael Terrell Roberson pleaded guilty to a superseding information charging him with a single count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). See Criminal Information [ECF No. 62] at 1; Plea Agreement [ECF No. 63] at 11. At the plea hearing, Roberson requested that he be allowed to remain on release pending sentencing. The government, citing 18 U.S.C. § 3143(a)(2), argued that this Court had no discretion to release Roberson, as the statute commands that the "judicial officer shall order that a person who has been found guilty of" certain offenses, including violations of 18 U.S.C. § 2252, "be detained."[1] The Court deferred acceptance of Roberson's plea agreement to consider the question of detention and invited the parties to submit any written responses. The government filed a response on September 8. See United States' Mem. in Supp. of Detention [ECF No. 68] ("Resp.") at 4. At a hearing on September 13, the Court accepted Roberson's guilty plea and heard further argument on the issue of detention.

---

[1] 18 U.S.C. § 3143(a)(2) applies to "a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142." Section 3142(f)(1)(A) includes convictions for "a crime of violence." Congress has characterized the offense that Roberson pleaded guilty to, Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), as a "crime of violence." See 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" to include "any felony under chapter . . . 110"). Section 2252 is codified in Chapter 110 of Title 18.

1

As the government notes, 18 U.S.C. § 3143(a)(2) contains mandatory language requiring detention pending sentencing unless certain conditions, which are not argued here,[2] are met. See Resp. at 2–3; accord United States v. Sharp, 517 F. Supp. 2d 462, 463 (D.D.C. 2007) ("Section 3143(a)(2)(A)(ii) requires mandatory detention for a Defendant found guilty of a crime of violence unless [certain conditions are met]."). However, "there appears to be one additional escape hatch for a defendant who is subject to mandatory detention pending sentencing under section 3143(a)(2): the statutory provision that is codified at 18 U.S.C. § 3145(c)." United States v. Wiggins, Crim. No. 19-cr-258 (KBJ), 2020 WL 1868891, at *4 (D.D.C. Apr. 10, 2020). Section 3145, titled "Review and appeal of a release or detention order," provides in relevant part:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). Notably, the subtitle of § 3145(c) reads: "Appeal from a release or detention order."

The applicability of this provision to defendants like Roberson has divided courts for decades. See, e.g., Sharp, 517 F. Supp. 2d at 464 n.2 ("Courts in other jurisdictions have examined 18 U.S.C. § 3145(c) and arrived at conflicting conclusions about the discretion it may or may not vest in district court judges."). The primary fault line is whether § 3145(c) applies, as the subtitle

---

[2] Defendants otherwise subject to the mandatory detention provisions of § 3143(a)(2) may, by the statute's terms, be exempt if (1) "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community" and (2) either "the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted" or "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person." 18 U.S.C. § 3143(a)(2)(A) and (B). As discussed below, the Court believes that (1) Roberson is not likely to flee or pose a danger to any person or the community; but as to (2), there has been no suggestion of acquittal or a new trial, and the government has not recommended a sentence of no imprisonment.

suggests, only to defendants who have pending appeals[3] and therefore gives only <u>appellate</u> courts the power to apply the "exceptional reasons" test, or instead whether the plain text of § 3145(c), which contains no limitation on which "judicial officer[s]" may exercise the power, or at what posture they may order defendants released, means § 3145(c) applies to defendants like Roberson. Courts—including some in this District—have increasingly taken the position that this provision permits district courts to order defendants awaiting sentencing released if they meet § 3145(c)'s requirements. See <u>United States v. Harris</u>, 451 F. Supp. 3d 64, 69 (D.D.C. 2020) ("Although the D.C. Circuit has yet to weigh in, every court of appeals that has addressed the question has held that a district court judge may order a person released pursuant to 18 U.S.C. § 3145(c)." (collecting cases)). This Court agrees that this reading is the better one.

Section 3145(c), then, applies to "defendants subject to detention pursuant to section 3143(a)(2)"[4]—like Roberson—who meet "the conditions of release set forth in section 3143(a)(1)." 18 U.S.C. § 3145(c). Under § 3143(a)(1), a defendant meets the requisite conditions if "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," which may include conditions of release. If those statutory requirements are met, the district court may order the defendant released under § 3145(c) "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." In short, § 3145(c) provides defendants who

---

[3] Courts have also disagreed as to whether this provision, if construed to cover just appeals, applies to only appeals from detention orders or more broadly to appeals from any decision. See, e.g., <u>United States v. Herrera-Soto</u>, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam) ("Limiting the period of release authorized by this section to appeals only of the detention order results in an incongruous limitation of an appellate court's authority to order release pending appeal.").

[4] The Court agrees with Judge Moss's interpretation of "subject to" in <u>Harris</u>: "Read in context, the phrase 'subject to' does not mean 'someone already "<u>subjected</u>" to mandatory detention'" such that the provision applies only to appeals; "it means 'affected by or <u>possibly</u> affected by.'" 451 F. Supp. 3d at 69 (citations omitted).

fall under § 3143(a)(2) an avenue to bypass stringent requirements of § 3143(a)(2) by instead showing that there are "exceptional reasons" why detention would not be appropriate.

Turning to Roberson's case, it is clear that he is a defendant "subject to detention pursuant to section 3143(a)(2)." The Court now finds, by clear and convincing evidence, that Roberson is not likely to flee or pose a danger to the community. Roberson pleaded guilty to a crime he committed seven years ago. See Statement of Offense [ECF No. 64] at 1. As the government conceded at the plea hearing, to the government's knowledge, Roberson has possessed only a single video containing child pornography. Since his offense, Roberson has been on release—including for the past 18 months as this case has been pending—and has neither committed any crimes nor taken any action suggesting that he may be a danger to the community. With minor exceptions, he has complied with his conditions of home detention. This includes appearing at the September 6 and September 13 hearings, even knowing that there was a risk that he would be taken into custody directly from the hearings. Hence, the Court finds that, with appropriate conditions, Roberson will not be a flight risk nor a danger to the community between now and his December 15 sentencing.

The question, then, is whether there are "exceptional reasons" why Roberson's detention would not be appropriate. Courts have found a clear definition of "exceptional reasons" elusive. See Wiggins, 2020 WL 1868891, at *6 ("Congress did not define the term 'exceptional reasons' in the statute, nor did it provide examples, so, naturally, courts have laid out their own standards."). The statutory scheme and caselaw provide a few guideposts in this analysis.

First, a finding of "exceptional reasons" need not be based on a proffer of innocence or suggestion that the defendant, once sentenced, will not be imprisoned; the enumerated exceptions in § 3143(a)(2) are clearly designed to cover those situations. The "escape hatch" in § 3145(c)

4

must be designed, then, for those defendants who are likely to face incarceration, but for whom something about the time between a finding of guilt and sentencing makes release appropriate.

Second, caselaw from other circuits suggests that the defendant must differentiate himself from other defendants; his arguments for release should not be applicable to numerous other defendants, or they would not be "exceptional."  See, e.g., United States v. Larue, 478 F.3d 924, 925 (8th Cir. 2007) (per curiam) (defining "extraordinary reasons" as those that are "clearly out of the ordinary, uncommon, or rare" (citation omitted)).  A defendant need not rely on just one reason that makes his circumstances "exceptional"; instead, "[e]xceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'"  United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004) (emphasis added) (citation omitted)).

Finally, courts are more inclined to credit exceptional reasons that speak to why detention during the time period between a guilty finding and sentencing would be harmful, and less inclined to release defendants simply because they have demonstrated compliance in the past or show they will continue to do so.  See, e.g., United States v. Pierre, Crim. A. No. 4:17-CR-414-1, 2022 WL 1016911, at *2 (S.D. Tex. Apr. 4, 2022) (granting release under § 3145(c) because ordering detention would interrupt defendant's wife's "essential medicine practice" during COVID-19 crisis).

Of course, "[t]he test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'"  Lea, 360 F.3d at 403 (citation omitted).  "By adopting the term 'exceptional reasons' but declining to define it, it appears that 'Congress placed broad discretion in the district court to consider all

5

the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct.'" Wiggins, 2020 WL 1868891, at *6 (citation omitted).

At the two hearings related to his plea and detention, Roberson offered a number of reasons why his detention pending sentencing would not be appropriate. These included the risk of contracting COVID-19 in the D.C. Jail, his potential treatment in the D.C. Jail, and the impact of detention on his ongoing mental health treatment.

The Court agrees with the numerous courts that have concluded that neither the risk of COVID-19 at this point in the pandemic nor speculation over conditions in a jail are, by themselves, "exceptional reasons" justifying release. See, e.g., Larue, 478 F.3d at 926. However, Roberson's confinement at the D.C. Jail right now would carry exceptionally high risks. The D.C. Jail is currently overcrowded and, according to reports, a particularly unsafe place to be detained at the moment. See Jenny Gathright, After Series Of Deaths At D.C. Jail, A Mother Demands Answers, DCist (Aug. 26, 2022, 12:50 PM), https://dcist.com/story/22/08/26/dc-jail-death-treyvon-littles-mother-demands-answers/ (describing slew of recent deaths in the jail, smuggling of weapons into the jail, and denials of food and water "for punitive reasons"). As to COVID-19, the D.C. Jail has made headlines for its subpar approach to COVID-19 prevention, see, e.g., Andrew Beaujon, The DC Jail Agrees to Unannounced Inspections to Settle Lawsuit Over Covid Measures, Washingtonian (Feb. 15, 2022), https://www.washingtonian.com/2022/02/15/the-dc-jail-agrees-to-unannounced-inspections-to-settle-lawsuit-over-covid-measures/, and Roberson's obesity places him in a higher risk category than the average detainee. In short, the health and safety risks Roberson would face at the D.C. Jail are heightened beyond what the average detained person may face.

The Court is particularly concerned with the impact the D.C. Jail conditions will have on Roberson's continued mental health treatment. Roberson reports that he has recently been diagnosed with mental health conditions and is continuing to receive treatment. As he represented at the two hearings, his treatment is a work in progress, as he and his doctor are working to find a medication and dosage that will address his mental health issues. Specifically, he recently switched medications and has started to take an anti-psychotic to treat bipolar disorder. The Court acknowledges that in other cases, courts have deemed the presence of mental health conditions not exceptional, and the Court agrees with that general assessment—Roberson may live with mental health conditions for the rest of his life, and once he has a treatment plan in place, they may not rise to the level of "exceptional," even if they are severe. But for the next three months, the Court has the authority and discretion under § 3145(c) to continue Roberson on release, where he is able to maintain the fluid process of finding the correct medication and dosage to address his mental health conditions.

This is not to say that any defendant subject to § 3143(a)(2) who happens to be in fluid treatment for mental health conditions has therefore necessarily shown exceptional reasons justifying release. But Roberson's recent and ongoing treatment with behavior-altering medications is not considered in a vacuum. Instead, the Court asks whether there is a "unique combination of circumstances" that, together, "give rise to situations that are out of the ordinary." Lea, 360 F.3d at 403. The Court finds that the confluence of Roberson's time-sensitive and significant mental health treatment, the heightened risk of violence at the D.C. Jail in particular,[5] and the COVID-19 risk to Roberson create an exceptionally high risk to Roberson's mental health and physical safety if he were to be detained.

---

[5] The Court agrees with defense counsel's observation that this defendant may be particularly susceptible to violence in the D.C. Jail given his offense conduct and personal characteristics.

"[C]ourts must weigh the relevant risk to the person detained, the community at large, and all other relevant circumstances in deciding whether the exceptional-reasons safety valve to the mandatory detention rules is available." Harris, 451 F. Supp. 3d at 71.  In Roberson's case, the "risk to the person detained," id., is high: the Court finds that the combination of circumstances makes Roberson's risk of mental and physical harm if detained at the D.C. Jail higher than that of other defendants.  The "risk to . . . the community at large," id., is low, given the limited nature and temporal remoteness of Roberson's crime and Roberson's minimal flight risk.  Taking "all other relevant circumstances," id., into account, the Court concludes that the "exceptional-reasons safety valve," id., is available here, and that release pending sentencing is appropriate given the need to stabilize Roberson's mental health treatment.

*   *   *

For the foregoing reasons, and upon consideration of the parties' representations during the September 6, 2022 hearing, and the entire record herein, it is hereby

**ORDERED** that defendant will remain released pending sentencing on December 15, 2022 pursuant to § 3145(c); and it is further

**ORDERED** that defendant will remain subject to the conditions imposed on him pursuant to [9] the order setting conditions of release and [10] the amended addendum thereto.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: September 13, 2022