UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>) Case No. 1:21-cr-00102-JDB<br>MICHAEL TERRELL ROBERSON )<br>Defendant )  | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

**COMES NOW** the United States of America, by and through Matthew M. Graves, United States Attorney for the District of Columbia and the undersigned Trial Attorney and submits this sentencing memorandum requesting that the Court sentence defendant Michael Terrell Roberson to a Guidelines sentence of 108 months imprisonment.

I.     BACKGROUND

*"I like to see there little erections"[1] – Michael Terrell Roberson*

    Between September 2015 and November 2016, defendant exchanged material depicting the rape and sexual abuse of children with a person he met online who used the email frankyank31@yahoo.com. Defendant's correspondence with "frankyank31" began on September 7, 2015 when defendant asked him for access to online cloud storage accounts containing child sexual abuse material. ECF No. 64. "Frankyank31" replied by asking defendant to "send me one vid so I know what you like[.]" Defendant replied by sending an email with a video titled "ll_-_Sugar_Kait_-_5yo.mp4" attached. The video depicts an adult male forcing his penis into the vagina of a small prepubescent child.

    Over the next year, defendant and "frankyank31" exchanged dozens of emails where defendant requested access to Dropbox cloud storage accounts and received account information

---

[1] Defendant's statements will be quoted in this memorandum without modification to spelling or grammatical errors.

Page **1** of **15**

containing the words "kiddy," "suck," "dick," "baby, "virgin," and "pedos." Defendant and "frankyank31" also discussed their sexual interest in children, including the following messages:[2]

| | | |
|---|---|---|
| "frankyank31": | | pw !@#$%kiddy!@#$% |
| Defendant: | | I got it !!!  Yaay |
| "frankyank31": | | good did you like girls or boys |
| Defendant: | | Both<br>What about you |
| "frankyank31": | | I like both little boys love to be sucked off |
| Defendant: | | I like to see there little erections and there faces |
| "frankyank31": | | give then awank and get then to wank you |
| Defendant: | | I am trying to log in . It keeps telling me wrong information |
| "frankyank31":<br>[…] | | NPW.  !@#$%kiddie!@#$% |
| "frankyank31": | | what do you like boys girls what age |
| Defendant: | | Both 5 and up |

Law enforcement discovered defendant's criminal conduct in 2018 through a series of other investigations which led to a search of the frankyank31@yahoo.com account. In March 2019 Homeland Security Investigations (HSI) Special Agent Abruzzese located defendant and interviewed him outside a youth center where defendant ran a dance group for young girls. Defendant also gave two phone interviews to Special Agent Abruzzese. Throughout these

---

[2] These messages are included in Exhibit 1.

interviews,[3] defendant gave untruthful or deceptive answers to questions about his exchange of child sexual abuse material with "frankyank31."

For example, defendant stated that he sent a video to "frankyank31" because he wanted to get a picture of the latter's penis.[4] Defendant also claimed that he did not know what the video depicted and that he was not seeking child sexual abuse material.[5] Defendant ultimately admitted that he distributed child sexual abuse material and that he accessed Dropbox accounts containing images and videos depicting the sexual abuse of children.[6] In his last interview, defendant stated:

> I've been in childcare for ten years. I've never hurt any of my kids and my dance company -- I've been doing that for two years. Well, I've been teaching dance longer than -- and the thing is, this comes out, this will probably destroy everything -- and the thing is, this is passion. This is what I love to do. I got caught in something with a guy who I shouldn't have got caught in and I probably should have cut the conversation off but -- you know that gut feeling you get when your stomach is all aching and that's -- for me, that's because you shouldn't be talking to him. You should cut all that out. And I probably should have. But the thing is, I apologize for the way it looks.[7]

After his arrest, defendant gave another interview to Special Agent Abruzzese. During this interview, defendant stated, "I know what I did was wrong. I was curious about it, everybody has that curious moment."[8]

## II.     PROCEDURAL HISTORY

---

[3] Audio files of these interviews were filed with the Court at ECF. No. 23.

[4] ECF No. 23 (NE_DC_Interview_Roberson at 00:56:54).

[5] ECF No. 23 (NE_DC_Interview_Roberson at 00:55:12).

[6] ECF No. 23 (Roberson,_Michael_(02-25-2021) 78:10 - 78:37; 03_11_19_Phone_Interview[1] 6:24 - 7:09; 3_12_19_Phone_Interview 00:09:53 - 00:11:21).

[7] ECF No. 23 (3_12_19_Phone_Interview at 00:42:04).

[8] ECF No. 23 (Roberson,_Michael_(02-25-2021) at 93:16).

On February 9, 2021, a grand jury returned an indictment charging defendant with one count of distributing child pornography in violation of Title 18, United States Code, Section 2252(a)(2) and (b)(1). ECF No. 1. On October 7, 2021, defendant moved to suppress all statements he made to Special Agent Abruzzese. ECF No. 22, 29. After denying defendant's motion to suppress, the Court scheduled trial to begin on January 31, 2022. Two weeks before trial, defendant moved for appointment of a new attorney, which the Court granted. ECF Minute Entry (January 11, 2022).

The Court rescheduled trial to commence on September 6, 2022. ECF Minute Order (July 13, 2022). On the morning of trial, defendant pleaded guilty to a one count criminal information charging him with possession of prepubescent child pornography in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2). Defendant faces a maximum penalty of 20 years imprisonment. Pursuant to Title 18, United States Code, Section 3583(k), the Court must impose a term of supervised release between five years and life.

### III.     RESTITUTION

Restitution is mandatory pursuant to Section 3663A. On February 8, 2023, the Government notified the victim's representative of their right to seek restitution from defendant. As of the date of this memorandum, the Government has not received a restitution request from the victim of defendant's crime. Defendant's offense conduct occurred before Dec. 7, 2018 and the provisions of Section 2259(b)(2)(B) specifying a minimum of $3,000 in restitution do not apply in this case.

### IV.     THE SENTENCING GUIDELINES

The Sentencing Guidelines serve as the "starting point and the initial benchmark" in determining the appropriate sentence and the sentencing court must "remain cognizant of them

throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The Presentence Investigation Report ("PSR") includes all appropriate specific offense characteristics under USSG §2G2.2 and correctly calculates defendant's total offense level to be 31.[9] *See* PSR ¶52; ECF No. 63 at 3. Likewise, defendant's plea agreement specifies a total offense level of 31 with an advisory range of 108 to 135 months imprisonment.

The Guidelines for trafficking material involving the sexual exploitation of minors is premised on the important goal of eliminating the market for such material by imposing lengthy sentences for those—like defendant Roberson—who contribute to the market. "The overarching goal of the sentencing guideline enhancements is to weaken the market for child pornography that keeps the producers and distributors of this filth in business. Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it." *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) (citations and quotation marks omitted).

Indeed, the District of Columbia Circuit observed that "the children in child-pornography videos are true victims whose victimization follows them the rest of their lives, which, to the court, was the reason why, in a nutshell, Congress has set these very serious, and sometimes, you could even argue, severe sentences for these types of actions here." *United States v. Fry*, 851 F.3d 1329, 1334 (D.C. Cir. 2017) (affirming sentence of 108 months imprisonment and 120 months of supervised release for possession of child pornography) (quotation marks omitted). In view of the harm caused by these crimes, the District of Columbia Circuit has found that, when a

---

[9] Paragraph 45 of the PSR incorrectly identifies a five-level increase for the number of images. The correct enhancement should be a two-level increase for at least 10 images, but fewer than 150 under USSG §2G2.2(b)(7)(A). However, the total offense level correctly accounts for only the two-level increase.

child pornography "sentence falls within the Guidelines range, we presume it is reasonable." *United States v. Mattea*, 895 F.3d 762, 769 (D.C. Cir. 2018) (affirming sentence of 151 months imprisonment for distribution of child pornography).

Here, the Guidelines specify enhancements which demonstrate the seriousness of defendant's criminal conduct. Specifically, the PSR correctly applies a four-level increase for material depicting sadistic or masochistic conduct under §2G2.2(b)(4). Courts around the country routinely apply this enhancement where material depicts the penetration of a prepubescent child's genitals. *See*, *e.g.*, *United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009) ("the First, Second, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have found that images involving penetrative sex between a prepubescent child and an adult male are *per se* sadistic.").

The PSR also correctly applies a five-level increase for distribution in exchange for any valuable consideration, but not for pecuniary gain under §2G2.2(b)(3)(B). The Sentencing Commission intended this enhancement to account for "the higher level of culpability when the defendant had the specific purpose of distributing child pornographic material to another person in exchange for valuable consideration." USSG App'x C, amend. 801. This enhancement applies where "the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child." USSG §2G2.2, comment (n. 1).

Defendant stipulates that he "sent the video file to ["frankyank31"] in exchange for passwords to online file storage accounts containing" child sexual abuse material. ECF No. 64.

Defendant's first email to "frankyank31" requested a password for a Dropbox account and had the word "trade" in the subject line. Exhibit 1 at 1. The circumstances surrounding defendant's distribution of the video to "frankyank31" show that defendant sent it four minutes after "frankyank31" asked for a video depicting the type of child sexual abuse defendant enjoyed viewing. Subsequent emails show that "frankyank31" sent defendant login information for a Dropbox account containing child sexual abuse material and that defendant accessed the account.

This is sufficient to show that defendant agreed to and did send "frankyank31" a video depicting the sexual abuse of a child for the specific purpose of gaining access to Dropbox accounts containing more child sexual abuse material. *See United States v. Oliver*, 919 F.3d 393, 404 (6th Cir. 2019) ("the enhancement could nonetheless apply if there were evidence of an implicit agreement to exchange for valuable consideration."); *United States v. Morehouse*, 34 F.4th 381, 393 (4th Cir. 2022) (enhancement applies where defendant distributes child sexual abuse material in order to receive other images and videos from a specific person). The Court should accordingly apply the five-level increase pursuant to USSG §2G2.2(b)(3)(B).

After applying a two-point decrease for acceptance of responsibility under USSG §3E1.1(a), defendant's total offense level is 31. With a criminal history category of I, defendant's advisory range is 108 to 135 months imprisonment.

V.     AVAILABLE SENTENCES

A sentence of minimal confinement in a case involving the distribution of material depicting the rape of a prepubescent child is "fundamentally unjust[.]" *United States v. Schrank*, 975 F.3d 534, 537 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2824, 210 L. Ed. 2d 944 (2021). As the Sixth Circuit observed

> "sentences are substantively unreasonable in child pornography cases when they require little or no jail time. … Over the years,

> Congress has made a series of amendments to child pornography laws, by reducing the number of images needed for conviction, increasing the statutory maximum term, and applying an enhancement based on the number of images in possession. Congress understands that child pornography is a serious crime. [A noncustodial sentence] does not reflect the seriousness of the offense or provide just punishment. Nor does it afford adequate deterrence to criminal conduct. Child pornography is an abhorrent offense that scars the children affected forever. And it doesn't take an economist to know that demand drives supply. … [The defendant's] ultimate sentence must reflect the severity of his depraved criminal conduct.

*Id*. at 536 (citations and quotation marks removed); *see also United States v. Ramey*, 721 F. App'x 135 (3d. Cir. 2018) (30 days imprisonment and five years of supervised release for possession of child pornography where the guidelines range was 63 to 78 months was unreasonable); *United States v. Hayes*, 383 F. App'x 204 (3d Cir. 2010); (6-month home confinement sentence for possession of child pornography was substantively unreasonable); *United States v. Demma*, 948 F.3d 722 (6th Cir. 2020) (one day of imprisonment followed by ten years of supervised release was unreasonable); *United States v. Pugh*, 515 F.3d 1179, 1203 (11th Cir. 2008) ("appellate courts have consistently overturned zero-imprisonment or other sharply downward-varying sentences in such cases").

## VI. THE SENTENCING FACTORS UNDER SECTION 3553(a)

In view of the sentencing factors under Section 3553(a), a Guidelines sentence is the just and appropriate sentence for defendant. A sentence of at least 108 months accurately reflects the seriousness of the offense, accounts for defendant's history and characteristics, and affords adequate deterrence to criminal conduct.

### A. The Nature and Circumstances of the Offense

The Court should not permit defendant to minimize his criminal conduct by claiming that he "only" distributed a single video of child sexual abuse material. In 2015 and 2016, defendant

persistently and enthusiastically consumed child sexual abuse material. First, defendant did not unwittingly stumble upon child sexual abuse material. He purposely sought it out and cultivated a relationship with a person he met on an online forum so that he could access new child sexual abuse material. Defendant was active in a community of like-minded individuals. In fact, he was sufficiently active that "frankyank31" already knew him. *See* Exhibit 1 at 2 ("I've seen you around on a forum"). Notably, defendant's correspondence with "frankyank31" began with no introduction or background; defendant immediately asked about a Dropbox account with the assumption it would contain the type of material he enjoyed viewing. The natural conclusion is that defendant was involved in a community dedicated to a sexual interest in children before he communicated with "frankyank31."

Similarly, accessing child sexual abuse material on Dropbox was a familiar practice for defendant. Contrary to his statements to Special Agent Abruzzese, defendant likely operated his own Dropbox account and gave others access to his content. In fact, when "frankyank31" told defendant that, "someone was deleting all my fills" (i.e., child sexual abuse material on Dropbox), defendant reacted with sympathy: "that's petty as shit for someone to do that someone did mines like that[.]" Exhibit 1 at 4.

Second, defendant's reaction to the child sexual abuse material is disturbing. Instead of recoiling in disgust at images and videos depicting the sexual abuse of children, defendant admiringly wrote, "I love your work love your last I will ever be a fan do you have any black[.]" Exhibit 1 at 6. After receiving a password containing the word "kiddie," defendant gleefully responded, "I got it !!!! Yaay[.]" Exhibit 1 at 12. When "frankyank31" told defendant, "little boys love to be sucked off[,]" defendant candidly replied, "I like to see there little erections[.]" Exhibit 1 at 16.

Third, defendant cannot claim that his interest in child sexual abuse material was fleeting. Defendant sent dozens of emails asking "frankyank31" for access to Dropbox accounts containing child sexual abuse material. Each email defendant sent to "frankyank31" could have been his last. Instead, defendant's sexual interest in children was strong enough that he went back to "frankyank31" again and again—for over a year.

In sum, careful analysis of the nature and circumstances of the offense shows that defendant's criminal conduct is not limited to distributing a single video. He participated in a forum where he met "frankyank31," he repeatedly sought access to more child sexual abuse material, and he did so with gusto. The nature and circumstances of the offense weigh in favor of a Guidelines sentence.

### B. Distributing Child Sexual Abuse Material is a Serious Crime

The harm posed by the defendant's actions is clear. As the Supreme Court recognized in the seminal case of *New York v. Ferber*:

> The use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole. It has been found that sexually exploited children are unable to develop healthy relationships in later life … Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotion repercussions.

458 U.S. 747, 758-60 nn. 9 & 10 (1982).

As the Fifth Circuit similarly concluded, the crimes of a "'passive' child pornography recipient" are not "somehow attenuated as compared to a person who actually produces or distributes child pornography . . . victimization of a child depicted in pornographic material

flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." *United States v. Norris*, 159 F.3d 926, 930 (5th Cir. 1998). After all, "the victimization of the children involved does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions" *Id.* at 929 (quotation marks omitted).

Exhibit 4 (filed under seal) contains the victim impact statement for the child depicted in the video defendant sent to "frankyank31." This document details how the continued circulation of material depicting the victim's sexual abuse has prolonged the trauma caused by that abuse. The actions of defendant Roberson add to this victim's heavy burden. Defendant's crime is undoubtedly serious and merits substantial punishment.

C.   **Defendant's History and Characteristics Weigh Against a Lenient Sentence**

Defendant's history and characteristics do not mitigate his trafficking of child sexual abuse material. If anything, his history and characteristics *aggravate* his criminal conduct.

As it relates to his criminal conduct, one fact about defendant's history and characteristics stands out: before, during, and after his criminal conduct, he worked as a caretaker for young children. PSR ¶84. When law enforcement discovered defendant's criminal conduct, he worked as a teacher's aide in a preschool and led a dance group for young children. PSR ¶83. In fact, nine days after his last email to "frankyank31" asking for access to child sexual abuse material, defendant wrote a cover letter detailing his experience working in preschools and stating that he wished to "continue to help kids learn in a fun, creative and safe environment, and contribute to their growth and wellbeing." Exhibit 2.

That defendant claimed that he contributed to children's wellbeing but also trafficked child sexual abuse material is mystifying—and extremely concerning. Moreover, defendant told Special Agent Abruzzese that "I've never hurt any of my kids."[10] This explanation shows defendant's detachment from the serious harm caused by the production of child sexual abuse material and his thoughtlessness about how his criminal conduct perpetuates this harm. Similarly concerning is defendant's participation in online "movements" where he purported to "teach kids and teens how to be safe on social media."[11] Defendant's participation in these groups further demonstrates that he was well aware of the harm caused by the sexual exploitation of children, but still chose to traffic child sexual abuse material.

Nevertheless, defendant persistently minimized his offense conduct, denied his sexual interest in children,[12] and offered dishonest rationalizations for his criminal conduct. He claimed that he was hacked. He said that he was only trying to get a picture of "frankyank31's" penis. He untruthfully characterized his communications with "frankyank31" as "one little curious moment."[13] The Court should reject defendant's shameful attempts to rationalize his criminal conduct.

The Court should also find that defendant's other characteristics do little to mitigate his offense conduct. The PSR details defendant's troubled upbringing, his placement in foster care, his own experience of sexual abuse, and his mental health conditions. Defendant's unfortunate

---

[10] ECF No. 23 (3_12_19_Phone_Interview at 00:42:04).

[11] *See* ECF No. 23 (NE_DC_Interview_Roberson at 00:08:35 - 00:14:14).

[12] Defendant's conduct plainly shows that he is sexually interested in children. In addition to his offense conduct and his messages to "frankyank31," defendant's internet search history corroborates his sexual interest in children. Defendant's internet history includes searches for "preteen underwear models" and "boy dick[.]" Exhibit 3.

[13] ECF No. 23 (Roberson,_Michael_(02-25-2021) at 85:06).

history may merit sympathy, but it does not merit a lenient sentence when weighed against the other factors under Section 3553(a).

Defendant's experience of sexual abuse does not reduce his culpability. To be sure, sexual abuse is a terrible thing for a person to endure. *See, e.g.*, Exhibit 4 (Victim Impact Statement). However, defendant's sexual abuse is not genuinely connected to his criminal conduct. There are obvious differences between the abuse he suffered and the crimes he committed. While both the abuse he suffered and his criminal conduct fall under the broad umbrella of child sexual exploitation, they have little else in common. The more likely conclusion is that defendant's experience of sexual abuse had little to do with his criminal conduct. Similarly, defendant's mental health diagnoses of depression and bipolar disorder are minimally relevant to his crime and the Court should accordingly give them little weight. In sum, a Guidelines sentence strikes an appropriate balance and adequately accounts for defendant's history and characteristics.

### D. A Guidelines Sentence Provides Adequate Deterrence and Avoids Unwarranted Sentence Disparities

In view of the other factors under Section 3553(a), a Guidelines sentence would not create an *unwarranted* sentencing disparity among similarly situated offenders. Defendant has already received a substantial benefit by being allowed to plead to possession rather than distribution: the base offense level for his count of conviction is four points less than it would be if he were convicted of a distribution offense. Any potential sentencing disparity is not unwarranted in view of his plea to a lesser offense. To that end, the Court should reject any attempt to characterize defendant as an average possession offender.

To the extent that the Court would still consider a lenient sentence to account for sentencing disparities, the Court must also consider the deterrent effect of a substantial sentence. The District of Colombia Circuit has held that a sentence of 108 months for possession of child sexual abuse material "would protect the public by deterring … others who may be inclined in doing similar kinds of things." *United States v. Fry*, 851 F.3d 1329, 1334 (D.C. Cir. 2017). A sentence below the Guidelines range, particularly one of any significant amount, would signal to this defendant, other potential offenders, and the community at large that distribution of child sexual abuse material is not a particularly serious crime. Indeed, a lenient sentence would only affirm defendant's persistent minimization and rationalization of his criminal conduct. A sentence substantially below the Guidelines range would fail to provide meaningful specific deterrence and would do little to promote respect for the law.

## VII.   CONCLUSION

A sentence consistent with the Guidelines is sufficient, but not greater than necessary to accomplish the purposes of sentencing under Section 3553(a). The United States respectfully requests that this Honorable Court sentence defendant Michael Terrell Roberson to a term of 108 months imprisonment followed by ten years' supervised release.

Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney

Date: April 17, 2023                              */s/ Eduardo Palomo*
                                                Eduardo Alberto Palomo
                                                Trial Attorney
                                                Texas Bar No. 24074847
                                                United States Department of Justice
                                                1301 New York Ave NW
                                                Washington, D.C. 20005
                                                Tel: (202) 305-9635

Email: Eduardo.palomo2@usdoj.gov